Good morning, Your Honor. Steve Duvernay, Benbrook Law Group, for Appellant Jordan Gallinger, et al. May it please the Court. Fifteen years ago, this Court held that treating retired law enforcement officers differently than similarly situated private citizens violates the Equal Protection Clause of the Fourteenth Amendment. We also held that the Second Amendment didn't apply to individuals. That's correct, Your Honor. No, that part didn't do too well. Let's see how the other part does. Well, today we ask you to reaffirm the portion of the holding because, as in Silvera, the retired peace officer exemption to the Gun-Free School Zones Act arbitrarily and unreasonably affords a privilege to one group of individuals that is denied to another. Silvera, in a long line of Supreme Court cases, stressed that in equal protection analysis, you must look to the link between the statutory objection and the classification drawn. And that link is missing here. The basic purpose of the Gun-Free School Zones Act, as the name indicates, is to promote safety and security on campus by eliminating firearms. It does this by keeping school zones generally gun-free, with an exception for active law enforcement, as well as other people who carry firearms during the course of employment. The retired peace officer exemption bears no rational relationship to the purpose of the statute. Retired officers, by their nature, are private citizens. They have returned to the ranks of the rest of us, and they're no longer authorized to engage in law enforcement activity. But their prior training is clearly different from an ordinary private citizen with a concealed carry permit. Do you concede that? If the retired officer exemption is limited only to officers that, in fact, received training and actually carried a firearm in the course of duty, but the scope of the retired officer exemption is broader than that. If we were dealing with an exemption, for example, that explicitly limited to, for example, the California Highway Patrol officers who carried firearms are exempt or something like that, the scope of the exemption would be different. But I think under Silvera, it rejected a similar training argument. So name me a retired peace officer under this statute who has not received special training in the use of firearms. Well, under the statute covers both a broad array of California state peace officers, which includes, for example, marshals of the state fair, parks and recreation officers, and there's no evidence in the record either way as to whether or not they specifically are required to carry a firearm. So you're just speculating that they have not received any special training with respect to the use of firearms? As to those classes, yes. And as to the federal side, there's no exemption or there's no restriction on the classification that ties it to the use of firearms in the course and scope of their previous duties. It's a matter of getting a concurrence. And retired police officers, retired peace officers who are allowed to carry concealed weapons under California law, there's some certification required. Isn't that not right? The statutory scheme for peace officers appears to enable them to obtain a concealed carry license as a matter of right. The initial certification states that a peace officer upon retirement has the right to request his or her agency to issue a concealed carry permit, which shall issue. And after that, the agency has to identify good cause in order to revoke the concealed carry license in the future. Counsel, you would agree that our Silvera decision did not engage in a similarly situated analysis? I think the similarly situated analysis is implicit in the court's decision. It notes the fact that equal protection analysis requires the class to be similarly situated and that most of its decision at that point focused on the second step of the analysis, but it did not, you're correct. At least explicitly discuss it. That's correct, Your Honor. If the Supreme Court has said that we're obligated to do this two-step process and that the Silvera case did not do that, are we still bound by Silvera if it's clearly in conflict with controlling Supreme Court law on that step? Yes, Your Honor, because I think Silvera on the second step of the analysis is accurate, and on the first step we're dealing with two classes of similarly situated private citizens for the purpose of licensing. I mean, they both hold concealed carry licenses, and with the exception of this statute, they are treated as if they are on equal footing once licensed. If we were to agree with you on that point, then, is there any way to reconcile your position with the Fourth Circuit's position on similarly situated in its recent case? I'm not certain, Your Honor. My understanding of that case is that the Fourth Circuit simply disagreed with Silvera and reached a different conclusion. That's what I'm asking. I'm saying, so if we were to go, if we were to say that Silvera implicitly held that they were similarly situated, I'm sorry, that they were similarly situated, and that would be in direct conflict with the Fourth Circuit's decision. That's correct, Your Honor. Okay. You know, I think the rule in this rational basis is that underinclusive and overinclusive are just part of that process. The Supreme Court has said in, let's see which case it was, Vance v. Bradley, that even if the classification involved is to some extent both underinclusive and overinclusive, and hence the line drawn imperfect, it's nevertheless the rule that perfection is by no means required. You know, it's, this rational basis is not a very strict test, as you know, and you can't draw the lines perfectly, but you don't think there's a difference between saying we don't want assault weapons and in the, there's no valid reason for assault weapons around the schools, whereas there may be a reason for pistols. And therefore, while there's no justification for distinguishing as to assault weapons, there may be a justification, one that even wasn't considered for normal firearm, pistols for instance, handguns. That's just a totally different question. And, you know, you can see when you either allow everybody or nobody to carry assault weapons, I would assume nobody in schools, but there may be a reason for pistols for some group in schools. Now the justification that's offered is that retired peace officers, not every one of them, but some of them may have greater danger than the average citizen. And there may be, it's an argument. How good it is, I'm not sure we're the ones to judge. I might happen to think it's not a very good one, but still it's an argument that we really didn't consider in Silvera and may be for rational basis purposes. It's certainly one that wasn't examined in Silvera and didn't exist, the argument that retired police officers are in greater danger that they need to carry weapons because they're worried about people they arrested. That wasn't considered. That's a different type of argument. How frivolous it is, if it's something that could be a justification. And it's not just really, doesn't have to be related, as you suggested, to the statute. It could be any legitimate purpose. Yes, Your Honor, it's correct that the rational basis is a deferential standard, but if you look at your opinion in Silvera, for example, you're looking at any reasonable theory to support the justification and both this Court's decision in, for example, Phillips v. Perry and the Supreme Court's statement in Reitman, which we cited in our brief, make clear that the factual context matters. And yes, there is the any hypothetical rationale language floating out there. We recognize that a rational basis sort of depends on the case. But here, whether or not there's a reason to allow guns or firearms or a subset of persons who are authorized to carry firearms on school zones is separate from the question of whether there's a reason to treat them differently. And here we have developed a factual record and made the allegations at the district court that this is the product of political bargaining that was made to favor a politically popular group and secure support in order to pass legislation and disfavor a politically unpopular group. Whereas for the previous 48 years, both of these groups were treated identically. Again, once licensed to carry a concealed weapon, they were entitled to the same basic privileges under California law. Well, yes and no. In Silvera, as I read the opinion, and I confess, unlike my colleague, I didn't write it. I'm just an innocent reader of the opinion. As I read Silvera, there was a requirement for the off-duty police officers, if they were to possess assault weapons, they could possess them only for law enforcement purposes. Whereas retired police officers were not subject to that requirement. They could simply possess assault weapons. And the court said, well, listen, if the retired peace officers are not restricted and for the purposes which we may have the assault weapons, we find the distinction then irrational. How do you respond to that? I think that underlies a key point, which is once peace officers retire, they return to the ranks of private citizens and they're no longer authorized to engage in law enforcement activity. So while, hypothetically, some retired peace officers may have an elevated self-defense need, we don't think that distinguishes them from the many California citizens who have been required to show that same sort of elevated and active self-defense need. But as I read Silvera, they said it was irrational to distinguish between ordinary private citizens who were forbidden to possess assault weapons and retired peace officers who were also forbidden to possess assault weapons because both the private citizens and the retired peace officers could use those weapons, possess those weapons and use them for any purpose. And to distinguish between those two groups when they are allowed to use such dangerous weapons, possess such dangerous weapons for any purpose, that was an irrational distinction. That's the whole thing. Yes, Your Honor. I think you have a similar irrational distinction when you're talking about in the context of a statute whose purpose is to promote the safety of school zones by making them gun-free, to allow one subclass of private citizens the opportunity, presumably, to defend themselves in the case of armed confrontation on school zones while denying that same possibility to another class of private citizens. Well, if you accept the premise that there is some danger to retired police officers that is greater than the danger of the average citizen, and you may not, but if you do accept that premise, there does seem to be a reason for distinguishing between the two groups. And, again, we think there may be a reason to distinguish between the two groups, but that, again, is contrary to the purpose of the statute, and when you look at the broader factual context of the legislation. Well, if the purpose of the statute is, as you say, and I certainly think it is to reduce guns in schools, and there is a distinction between the two groups, that means you could legislate eliminating one group and get around to the second group. The next time, the legislature has the guts to do it. I mean, as you know, all legislation is a political process, and this clearly was a political decision. The legislature would have liked, initially, to eliminate both sets of groups, and political pressure was exerted by a not underprivileged lobbying group or discriminated against. I mean, you hardly say that it's a group without political power, the NRA. But, you know, they succeeded in persuading the legislature to only eliminate one of the two groups at this point. That can lead, ultimately, to eliminating two groups if the legislature ever finds the political will to do that. But as long as there's a legitimate, rational basis for distinguishing between the two, and, you know, there is, as far as the training of handguns, there's a uniform training of peace officers, which is fairly extensive. What you require of the ordinary citizen who wants a concealed gun permit, that depends on each county by county. And also, as you know, there's a bill that's already passed, the House, that says that any citizen who has a concealed weapons permit from any state must be recognized in every other state. So we don't even know what kind of people may have concealed weapons permits, what kind of training, if any, they had. It could be a very broad group. So I think you have to really get around to saying that either it's irrational for there to be a category of former police officers who have clearly extensive training and who, in addition, may be subject to greater danger and greater need to carry a concealed weapon as opposed to an assault weapon. No, please continue. We won't hold you to a strict limit. But can you really say that it's an irrational classification? I think given the scope of the retired peace officer exemption, it is irrational, particularly in light of the purpose of the act. It hasn't been drawn to capture only retired peace officers that have either a particular type of training or a particular type of need to carry for self-defense. And while we recognize that perfection is not the standard in rational basis review, it still can't be such a broad classification that it renders the distinction irrational in light of the broader purpose of the statutory scheme. All right. You have two minutes for rebuttal, but we may not hold you to that if you need more. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is John Echevarria. I'm a Deputy Attorney General, and I represent the defendant in this matter. The Court should affirm the District Court's dismissal of plaintiff's complaint with prejudice because plaintiffs have not plausibly alleged the existence of a control group that is similarly situated to honorably retired peace officers. Concealed carry permit holders in the state of California are not similarly situated in light of the training and experience that honorably retired peace officers have and the heightened and acute safety risks that they may face based on their interactions with the public in the course of the performance of their duties while they were in active law enforcement or off duty, and also just based on their association. It's a more generalized threat being affiliated with law enforcement, even if one is retired. But even if the Court were to assume, which it can, that there is a similarly situated group, under rational basis scrutiny, which everyone appears to agree is the applicable standard of scrutiny in this case, the exemption for honorably retired peace officers satisfies rational basis scrutiny. It is rationally related to several legitimate government interests, the legitimate state interest of safety on school campuses and the personal safety of honorably retired peace officers. And as the panel has observed, there are several distinctions between the factual record in this case and the law in this case and the case in Silvera. What training, if any, is a private citizen in California required to have in order to obtain a concealed carry permit? It does depend on the licensing authority. The licensing authority has the discretion under Penal Code Section 26165. Is that county by county? County by county or the municipalities also. The police chiefs can also, it's my understanding, can also specify what training would be required. And under that statutory provision, at a maximum, an applicant for a concealed carry permit for the first application has to complete at most 16 hours of training. This is the case in the county of Sacramento, for example. There's another provision that allows the licensing authority to require a community college course that is certified by the Commission on Peace Officers Standards and Training, which is the post commission, which I believe Judge Reinhart was referring to earlier, which is what all peace officers in California, they're all trained according to those standards. Maybe we're off track from my question. My question is not as to peace officers. My question is as to civilians getting a concealed carry permit. And what I'm really interested in is what is the least amount of training that someone can have in California and still get a concealed carry permit? I don't know what the least is. When I was discussing the post standards, there's another provision that allows the licensing authority to require at most 24 hours of training in a community college course that's consistent with post. And that's the maximum. So it's 16 hours or 24 hours. You keep talking about the maximum, and I ask about the minimum. For the minimum. I guess the answer is you don't know. I don't know. Yeah, there's just a maximum. Now, for renewals, there is a minimum. And for a renewal concealed carry permit, it's a minimum of four hours of training. And that's by state law, not county by county? That is according to state law. For private party concealed carry? Yes. Okay. Yes, that's correct. But you don't know the minimum for the initial? The statute is silent on the minimum in Section 1. So there's no state minimum? There's no statewide minimum for initial applications for a concealed carry permit. Got it. Okay. And you can compare that with what peace officers have to undergo before they even become peace officers. They have to undergo significant training and a significant vetting process just to become peace officers. Aside from the vetting process, what kind of training do they get, minimum training, to carry weapons? For peace officers in California? Yes. They would have to undergo training according to the commission on post. So they would have to be qualified in the use of particular firearms. And when they become peace officers, there's continuing formal training on the job and off the job. Safety precautions are they become a matter of habit while these peace officers are performing their duties. Even off-duty peace officers have obligations to the public to protect public safety. And when they retire, the training and the threats that they may have just don't disappear. And it was within the province of the legislature to recognize that and to allow them to continue to carry firearms on school grounds. Counsel, I just want to make sure I understand the scope of this law. If I, under the current law, assuming that this court were to uphold it, if I am a retired peace officer, I take a step back. Assume I'm not a retired peace officer and I want to have a gun near our school. Is it still the 1,000-foot limit? If you have a concealed carry permit? Assuming I have no permit, I don't fall into either category. I'm just trying to understand the scope of this law. Is it still the 1,000 feet within a school? You would be prohibited from carrying a firearm within 1,000 feet of a K-12 school or on the ground of a university or college. And I know there's a provision that says that the principal of the school can allow someone to carry a gun. I assume that's only on this campus? That was a provision in the law before the enactment of AB 424. Now it's struck down. That was struck for K-12 schools. But the university and college officials still do have that discretion. But if you're a private person without a concealed carry permit, you can't carry a concealed weapon, period. Right. In public. Absolutely. And that relates to other laws, not specifically the Gun-Free Schools Act. And the fact that this statute applies to a general class of retired peace officers who are honorably retired, who the plaintiffs may think do not have a significantly high interest in needing to protect themselves, the over-inclusiveness or the under-inclusiveness of the statute in this case does not render it unconstitutional. As the panel has observed, the legislature has flexibility in trying to address matters of public concern. And in this case, the statute is not unreasonably over-inclusive or unreasonably under-inclusive. In Silvera, in upholding the off-duty exemption for peace officers, the court observed that it was manifestly rational for a majority of the categories of peace officers in that case. In Silvera, the court did not break up the class of retired peace officers into different categories and assess whether for each category it was rational for them to possess assault weapons off-duty. The court generalized. And the court should do so here as well. And the fact that this legislation was the product of a political process and that interest groups were lobbying members of the California legislature to preserve the exemption for honorably retired peace officers does not render this statute unconstitutional. If that were the case, then much legislation that is passed throughout the country would be subject to constitutional challenge under the Equal Protection Clause. That cannot possibly be the case. The problem is not whether the sausage-making of legislating influences the outcome. The concern is when there is no other rational basis to support a law. In this case, there are several rational bases that are independent of any political process that justify the law. It's difficult to apply that principle to tax legislation. Absolutely. Yeah, I think this sausage-making metaphor is an insult to sausage-making. I would agree. I would agree, Your Honor. And another point on the issue of animus, the plaintiffs have argued that concealed carry permit holders are an unpopular group that were unfairly discriminated in the enactment of Senate Bill 707. There is no evidence of animus. The evidence that is in the appellate record and in the additional materials that were submitted by the plaintiffs on appeal show that there were several rational bases that were provided to preserve the exemption for honorably retired peace officers, and there was no animus toward concealed carry permit holders. And moreover, concealed carry permit holders have a special exemption from firearms prohibitions in that they are granted permits to carry concealed weapons, unlike other members of the public. That's a privilege that others don't have. Furthermore, under the Gun-Free School Zone Act, with the enactment of SB 707, they are not prohibited from carrying concealed weapons within school zones entirely. They're allowed to carry within 1,000 feet of a K-12 school, and that's a privilege, again, that other individuals don't have. So any claim of animus in this case is just implausible, and the plaintiff's complaint should be dismissed with prejudice on that basis. Let me just make certain I understand the legislation. The concealed weapons group, those with the permits, are allowed to carry the concealed weapons outside of the school boundaries during that, but in the 1,000 foot, so it's only on the school grounds themselves. That is correct. The concealed carry permit holders are prohibited from carrying only on the grounds of a K-12 school or a university or college. They are permitted to carry within a school zone, which is 1,000 feet. It's a 1,000 foot buffer around a school. Unless the Court has any additional questions, I'll submit. Thank you, counsel. Thank you, Your Honors. Two brief points on reply. The first, on the political unpopularity point, the State has used the word animus several times in its brief and again today at oral argument. I think the animus idea injects a different standard than what the Supreme Court has said, which is to favor a politically popular group or disadvantage a politically unpopular one. Are you suggesting that people with gun permits are a politically unpopular group? I think in the State of California with our current legislature and executive offices people with concealed carry licenses are probably about as politically unpopular as the hippies who lived on a commune in the 1960s were to the conservative Congress then. I don't think that there is a material difference in terms of political popularity. No, that's hard to say, meaning those who actually have the concealed carry permits, they've been given the privilege that they ask for. I would think if there's anybody politically unpopular, it's those who want to have concealed carry permits and who don't get them. They're the ones who are getting punished or at least treated disfavorably. I agree, as I believe my clients would, that those that would like to exercise their constitutional right to keep and bear arms outside of the home are being discriminated against. Do you think that the NRA is a politically unpopular group in California? I think in California, yes. I could give you election after election where you're not in good shape if the NRA is opposing you. I think you underestimate your client's political power. We may agree to disagree there, Your Honor, but if you have no further questions I'll submit. Thank you. All right, well thank you both for an interesting argument.
judges: Reinhardt, W. Fletcher, Owens